## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **TERRY BENETIS** <br> 250 Bane St. <br> Newton Falls, OH 44444 <br><br> Plaintiff, <br><br> vs. <br><br> **UNIVERSITY HOSPITALS** <br>   c/o its Statutory Agent, <br>   University Hospitals Health System, Inc. <br>   3605 Warrensville Center Rd <br>   Shaker Heights, Ohio 44122 <br><br> Defendant. | ) CASE NO. <br> ) <br> ) JUDGE <br> ) <br> ) <br> ) **COMPLAINT** <br> ) <br> ) <br> ) *Jury Demand Endorsed Hereon* <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

    Now comes Plaintiff, Terry Benetis, and as and for her Complaint against the Defendant hereby states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343, as it is an action seeking redress under the laws and statutes of the United States of America for deprivations of rights secured by the Constitution and laws of the United States.

2. This Court has jurisdiction over Plaintiff's claims arising under the Constitution and laws of the State of Ohio, pursuant to 28 U.S.C. §1367(a), as such claims are part of the same case or controversy as those giving rise to the claims over which this Court has jurisdiction under 28 U.S.C. §1331 and §1343.

3. Venue properly lies in this Court under 28 U.S.C. §1391(b), as Defendant resides within the Northern District of Ohio and all relevant events giving rise to the action occurred within the Northern District of Ohio.

4. Plaintiff, Terry Benetis, is an individual over the age of 18 years who, at all times relevant hereto, resided in the City of Newton Falls, County of Trumbull, and State of Ohio.

5. Defendant, University Hospitals, is a corporation licensed to transact business in the State of Ohio, and the events giving rise to this action arose out of its activities in the City of Highland Hills, County of Cuyahoga, State of Ohio.

## FACTUAL HISTORY

6. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

7. Plaintiff was hired by Defendant on November 6, 2017 and had worked for Defendant as a Revenue Cycle Specialist.

8. Throughout her employment, Plaintiff worked at Defendant's hospital Customer Service Center located in the City of Highland Hills, County of Cuyahoga, State of Ohio and was 50 years old at the time she was hired.

9. Plaintiff suffers from PTSD, anxiety disorder, major depression, cognitive disorder, among others.

10. On November 7 and November 8, 2017, Plaintiff emailed Jennifer Rohaley, her supervisor at Defendant's hospital, that she would not be in the office due to illness and requested to reschedule her training.  Jennifer Rohaley replied okay to both, and with a future instruction for call-off procedures.

11. On November 24, 2017, Plaintiff emailed her supervisor Jennifer Rohaley that she was scheduled for two weeks of jury duty beginning November 27, 2017.

12. On December 1, 2017, Plaintiff emailed her supervisor to remind her that she was on-call for jury duty the week of December 4, 2017.

13. On December 14, 2017, Plaintiff attended a scheduled doctor's appointment.

14. On December 21, 2017, Plaintiff attended a scheduled doctor's appointment.

15. On January 8, 2018, Plaintiff called off work due to inclement weather.

16. On January 18, 2018, Plaintiff attended a scheduled doctor's appointment.

17. On January 25, 2018, Plaintiff told Jennifer Rohaley that her father was moved to Hospice care.

18. On January 28, 2018, Plaintiff's father passed away and she took a 3-day bereavement period from work.

19. On February 1, 2018, Plaintiff returned to work after her 3-day bereavement period.

20. On February 1, 2018, Plaintiff attended a scheduled doctor's appointment.

21. On February 6, 2018, Plaintiff attended a scheduled doctor's appointment.

22. On February 7, 2018, Plaintiff called off work due to inclement weather.

23. On February 8, 2018, Plaintiff received an email from Jennifer Rohaley asking Plaintiff if she was having challenges. Plaintiff responded 6 minutes later that she does not "do these very often. I am doing okay though."

24. On February 19, 2018, Jennifer Rohaley emailed Plaintiff with concerns that she was not meeting the productivity standard for the daily production of bills, and that she and Plaintiff would "review this week." Plaintiff responded to Jennifer Rohaley's email, 47 minutes later, and notified her "*I have discussed this with two of my healthcare providers. They are working with me to help improve some disabilities that I am having. I hope to discuss further during my review.*" (emphasis added). Plaintiff and Jennifer Rohaley did not meet that week for Plaintiff's review, nor did Jennifer Rohaley respond to Plaintiff's email.

25. On February 22, 2018, Plaintiff attended a scheduled doctor's appointment.

26. On February 22, 2018, Plaintiff called off work for illness.

27. On March 5, 2018, Plaintiff attended a scheduled doctor's appointment.

28. On March 6, 2018, Plaintiff told Jennifer Rohaley that she was still experiencing fear, anxiety, neck pain and headaches from her automobile accident on December 13, 2016. She explained that she was still treating for her injuries from the accident and further told Jennifer Rohaley that she was having difficulty focusing since her father's death. Plaintiff then asked for accommodation in the form of a transfer to a job closer to my home, as suggested by her primary care physician; or possibly working from home -- or perhaps taking a medical leave to be able to attend her doctor's appointments. Jennifer Rohaley informed Plaintiff that she could not take any kind of leave until she worked for Defendant at least 6 months; nor could she transfer to a facility closer to home until Plaintiff worked for at least a year. Jennifer Rohaley also informed Plaintiff that working from home was not possible because Defendant does not allow that.

29. On March 8 and 9, 2018, Plaintiff called off work due to her illness.

30. On April 2, 2018, Plaintiff attended a scheduled doctor's appointment.

31. On April 5, 2018, Plaintiff attended a scheduled doctor's appointment.

32. On April 10, 2018 and April 11, 2018, Plaintiff called off work to go to the emergency department to attend to her disabilities. She had discussed this with Jennifer Rohaley on February 19, 2018 and March 6, 2018. Plaintiff also left a voicemail with Jennifer Rohaley informing her that she would be missing work on those dates.

33. Nonetheless, on April 13, 2018, Plaintiff received a written reprimand for missing work on April 10, 2018 and April 11, 2018.

34. On May 3, 2018, Plaintiff scheduled and was approved for 8 hours of paid-time-off (PTO).

35. On May 9, 2018, Plaintiff attended a scheduled doctor's appointment.

36. On May 15, 2018, Plaintiff attended a scheduled doctor's appointment.

37. On May 21, 2018, Plaintiff attended a scheduled doctor's appointment.

38. On May 23, 2018, Plaintiff attended a scheduled doctor's appointment.

39. On May 29, 2018, Plaintiff attended a scheduled doctor's appointments with two different healthcare providers.

40. On May 29, 2018, Plaintiff faxed Lisa Edgehouse, (at Defendant's Disability Management Department) her original request for Medical Leave of Absence (which was dated May 17, 2018). Section 2b of that request was completed as follows: ***"Will it be medically necessary for the employee to take leave to attend follow-up appointments and/or work part time or on a reduced schedule because of the medical condition. Yes."*** (emphasis added).

41. It should be noted that Plaintiff's healthcare providers had advised her not to take a continuous leave of absence, but instead take intermittent leaves of absence, because a long continuous leave of absence would not be helpful to Plaintiff's conditions, diagnoses, and disabilities. However, because Defendant's policies and procedures only allowed for a continuous leave of absence, and not intermittent leaves of absences, her healthcare providers were forced to order a continuous leave of absence for Plaintiff so that she could treat her disabilities. This ultimately caused more harm to Plaintiff's health and also caused a longer recovery for Plaintiff.

42. On May 31, 2018, Defendant issued a letter to Plaintiff notifying her that her request for intermittent Family Medical Leave (FMLA) and Medical Leave of Absence (MLOA) from May 29, 2018 to November 29, 2018 was denied, because Plaintiff was not eligible as she was not employed for at least one year.

43. On May 31, 2018, Plaintiff discussed with her supervisor Jennifer Rohaley that her doctor had sent a request for Medical Leave of Absence to begin on May 29, 2018.  Jennifer Rohaley said she received an email the day prior, and that her Leave was denied; adding that Plaintiff will be written up for her absence.

44. On May 31, 2018, Plaintiff discussed with Lisa Edgehouse (at Defendant's Disability Management Services) that she is not unaware of her application being denied since she is eligible for a MLOA. Plaintiff complained via email that requesting a Medical Leave of Absence should be on a different form because she applied for a Medical Disability Leave of Absence and not the FMLA. She also complained that an Intermittent Leave is what she needed, and she should not have been disciplined for dates missed that her doctor had already said she needed off work.

45. On June 1, 2018, Plaintiff received a voicemail from Lisa Edgehouse explaining that if she needed to make a claim for Short Term Disability (STD), Plaintiff would need to contact Diane Miller at Defendant's Disability Management Services.

46. Lisa Edgehouse told Plaintiff that she was not eligible for FMLA because Plaintiff had not worked for one year, but was eligible for continuous Medical Leave of Absence, not intermittent. Lisa Edgehouse advised Plaintiff that a continuous leave of absence would be approved upon receipt of a doctor's order.

47. On June 1, 2018, Plaintiff received a "Progressive Corrective Action Warning" for missing work on May 29, 2018 and May 30, 2018, even though Plaintiff was approved to attend all doctor's appointments by her supervisor, Jennifer Rohaley; and after her healthcare providers had ordered her off work on those dates.

48. On June 4, 2018, Plaintiff received two separate voicemails from Marie Burger, in Defendant's Employee Assistance Program, acknowledging receipt of Plaintiff's June 3, 2018 message, and notifying Plaintiff to email her if it was easier.

49. On June 4, 2018, Defendant issued a letter to Plaintiff notifying her that if she qualified for FMLA or MLOA and her STD claim is approved, the two programs would run concurrently.

50. On June 11, 2018, Defendant issued a Progressive Disciplinary Action "Final Warning" letter to Plaintiff because she requested to leave on May 31, 2018 after working only 3 hours that day due to her illnesses, conditions, and disabilities which Defendant had aggravated. This Final Warning was issued after Jennifer Rohaley had told Plaintiff it was okay for Plaintiff to leave. Jennifer Rohaley advised Plaintiff on May 31, 2018 that she would be disciplined for missing May 30, 2018 and for not having enough PTO time for May 28, 2018.  However, Jennifer Rohaley failed to mention or warn Plaintiff that leaving for the rest of the day would cause further disciplinary action.

51. Plaintiff also discussed this "Final Warning" with Lisa Edgehouse by email, who assured Plaintiff that she was indeed eligible for MLOA.

52. On June 12, 2018, Plaintiff initiated an MLOA request through Oracle, Defendant's intranet service, per Lisa Edgehouse's recommendation, stating that Plaintiff was not aware she was required to proceed in this fashion in order to request disability leave.

53. On June 12, 2018, Jennifer Rohaley noted in writing: "The FMLA was denied. If the Medical Leave of Absence is approved, I will work with human resources about updating the human resources files. The employee has been out of PTO since Memorial Day."

7

54. On June 14, 2018, Defendant issued a letter notifying Plaintiff that Defendant is in receipt of Plaintiff's request for FMLA or MLOA to begin May 29, 2018, and that Plaintiff's leave is provisionally approved contingent upon Defendant's receipt of enclosed Certificate of Physician or Practitioner form, to be returned by July 2, 2018.

55. On June 14, 2018, Plaintiff attended a doctor's appointment because her primary care physician wanted to see her. Plaintiff sent an email to Jennifer Rohaley, in addition to stopping by her desk (Jennifer was not there), before leaving for her doctor's appointment. In the email to Jennifer Rohaley, Plaintiff explained why she was leaving for the doctor's appointment with her primary care physician, and also explained that she sent a three week MLOA request to Defendant. Plaintiff also left a phone number for Jennifer Rohaley to call if she needed to reach her.

56. On June 15, 2018, Jennifer Rohaley noted in Oracle, Defendant's intranet service, that if Plaintiff's MLOA was approved, Jennifer Rohaley would work with the human resources department to have these disciplinary actions corrected.

57. On June 21, 2018, Defendant issued a letter advising Plaintiff that her request for MLOA "has been approved for a start date of May 29, 2018 to an estimated return to work date of July 16, 2018." Despite this letter, Defendant still enforced the May 29, 2018, May 30, 2018 reprimands against Plaintiff, including the May 31, 2018 "Final Warning" reprimand -- even though those reprimands were directly related to Plaintiff's disability.

58. On June 24, 2018, Plaintiff received a 1% raise in pay.

59. On June 29, 2019, Defendant issued a letter advising that it was in receipt of Dr. Sargious' completed Attending Physician Statement and office visit notes ordering Plaintiff off work on May 29, 2018.

60. On July 5, 2018, Jennifer Rohaley left Plaintiff a voicemail to check on Plaintiff and to tell her that she hopes Plaintiff is doing well.

61. On July 6, 2018, Jennifer Rohaley left Plaintiff a voicemail explaining that she spoke with Amy Martin in human resources via email, and since Plaintiff's leave will not be extended, if her physician had not yet sent information, to please send to Cara Ladaika.

62. Interestingly, July 6, 2018, is the termination date that Anthem Insurance, Aetna Life Insurance, 403B, and payroll, have as Plaintiff's termination date, even though Plaintiff never received notice from Defendant stating that she was terminated on that date. It should also be noted that July 6, 2018 is only 23 days after Plaintiff's approved 45 day MLOA.

63. On July 10, 2018, Plaintiff received a voicemail from Lisa Edgehouse to remind her that her estimated return to work date is July 16, 2018. She informed Plaintiff that if she is unable to return to work on that date, that Lisa will need a certification to update and extend Plaintiff's leave. Lisa also asked Plaintiff to follow-up with Plaintiff's medical provider to make sure the information is returned back to her.

64. On July 11, 2018, Plaintiff received a voicemail from Jennifer Rohaley asking her to check-in with her on Plaintiff's MLOA paperwork because nothing had come across her desk. Jennifer said Plaintiff was due back at work on July 16, 2018, and if she did not come back to work on that date, her job was unprotected.

65. On July 11, 2018, a letter was sent from Preferred Care Counseling to Lisa Edgehouse explaining that Plaintiff's leave was a single continuous period of incapacity from May 1, 2018 to August 31, 2018 and stating that "Follow-up or Part-time reduced work schedule. Yes."

66. On August 20, 2018, Defendant issued a certified letter to Plaintiff stating that Plaintiff's full-time position with Defendant was filled, and since she is still an active employee, she is cleared to return to work by her healthcare provider within 52 weeks; and that she would be afforded up to 3 months to apply for positions for which Plaintiff is qualified.

67. On August 28, 2018, Plaintiff received a voicemail from Jennifer Rohaley stating that she wanted to follow-up regarding the certified letter she had sent Plaintiff on August 20, 2018, and that she wanted to talk to her about her position being filled.

68. On December 17, 2018, Plaintiff's doctor released her to return to work at a reduced schedule of up to 20 hours per week. The December 17, 2018 date is clearly within the 52-week period discussed by Jennifer Rohaley.

69. On December 19, 2018, Plaintiff received a voicemail from Defendant's HR Talent Acquisition Department, explaining that after speaking with HR, and since Plaintiff is an "External Candidate," Defendant suggests she apply for jobs she is interested in.

70. On December 21, 2018, Plaintiff received an email from Defendant confirming that she has applied at Defendant's patient access supervisor position. However, she was not even considered for that position because he had violated Defendant's Recruiting and Selection Policy HR-75, which stated "you must not have received a written warning in the prior 3 months and/or suspension/final warning within one year. Unfortunately, at this time you do not meet this criteria and therefore will not be considered for the above noted position."

71. However, Plaintiff had only received a "suspension/final warning within one year" because Defendant improperly reprimanded Plaintiff for missing time off of work between May 29, 2018 and May 31, 2018 when she was approved by Defendant for MLOA for treatment related to her disabilities during those dates.

72. Plaintiff applied for several other positions with Defendant after her doctor released her to return to work, and she was denied each and every time because she was deemed to have violated Defendant's Recruiting and Selection Policy HR-75, which were the result of Defendant's improper reprimands of due to her disabilities. Defendant never allowed Plaintiff to return to work, even though her doctor had cleared her to do so.

## ADMINISTRATIVE PREREQUISITES

73. Plaintiff has complied with all the administrative prerequisites to action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. as follows:

    a. On or about April 11, 2019, Plaintiff timely filed a formal charge of disability discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC").

    b. Plaintiff fully cooperated in the agency's investigation.

    c. Plaintiff received Dismissal and Notice of Suit Rights from the EEOC on her charges on September 16, 2019, which was dated September 13, 2019, and which notified her she had exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this lawsuit. A copy of the EEOC Right to Sue Letter is attached hereto as Plaintiff's Exhibit A.

## FIRST CLAIM
## AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12112)

74. Plaintiff realleges and incorporates by reference the allegations contained in the above-mentioned paragraphs as if fully rewritten herein.

75. This claim is authorized and instituted pursuant to the provisions of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 et seq., as amended, for relief based upon the unlawful employment practices of Defendant.

76. At all times relevant hereto, Plaintiff was disabled under 42 U.S.C.A. §§ 12101 et seq., as a result of her disability.

77. Plaintiff was qualified for her position.

78. Plaintiff required reasonable accommodation in the form of medical leave, reinstatement, and/or reassignment.

79. Defendant could accommodate Plaintiff's requested accommodations without undue hardship.

80. Defendant discriminated against Plaintiff by failing to accommodate her, terminating her employment, failing to reinstate her, and/or failing to reassign her.

81. Defendant failed to engage in the interactive process by terminating Plaintiff without discussion of possible accommodation.

82. Defendant retaliated against Plaintiff by failing to reinstate or reassign her and by surreptitiously discharging her.

83. As a further result of Defendant's above stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to her as an employee, but denied because of her disability, in an amount to be proven at trial.

## SECOND CLAIM
## RETALIATION (42 U.S.C. § 12203)

84. Plaintiff realleges and incorporates by reference the allegations contained in the above-mentioned paragraphs as if fully rewritten herein.

85. The act opposing an employer's discriminatory practices is protected activity as defined by 42 U.S.C. § 12203(a).

86. Both prior to and following her reprimands in May, 2018, Plaintiff complained internally about Defendant's discriminatory practices.

87. When Defendant did nothing to remedy the discrimination, Plaintiff eventually filed an EEOC charge on April 11, 2019.

88. Defendant retaliated, and continues to retaliate, against Plaintiff by failing to accommodate her, terminating her employment, failing to reinstate her, and/or failing to reassign her

89. Defendant's conduct evidences a conscious disregard for Plaintiff's right and obligation to complain of discrimination, such disregard having a great possibility of causing substantial damage and a chilling effect on the right to complain of discrimination in the workplace, and thereby subjecting Defendant to liability for punitive damages.

90. As a result of Defendant's retaliatory actions, Plaintiff has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to her as an employee, in an amount to be proven at trial.

91. As further direct and proximate result of Defendant's actions, Plaintiff also suffered, and continues to suffer from, increased stress, anxiety, loss of confidence, and mental distress.

### THIRD CLAIM
### R.C. 4112.02 – UNLAWFUL DISTRIMINATORY PRACTICES

92. Plaintiff realleges and incorporates by reference the allegations contained in the above-mentioned paragraphs as if fully rewritten herein.

93. As a result of the Defendant's conduct described above, Plaintiff has been discriminated and retaliated against on the basis of her disability in violation of R.C. 4112.02 and its implementing regulations.

94. As a result of Defendant's actions, Plaintiff has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to her as an employee, in an amount to be proven at trial.

95. As further direct and proximate result of Defendant's violation of her rights under the above statute, Plaintiff also suffered, and continues to suffer from, increased stress, anxiety, loss of confidence, and mental distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant and award her all relief as allowed by law, including, but not limited to, the following:

A. Actual economic damages as established at trial;

B. Compensatory damages, including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

C. Punitive damages;

D. Pre-judgment and post-judgment interest at the statutory rate;

E. Attorneys' fees, costs and expenses; and

F. Such further relief as justice requires.

Respectfully submitted,

_s/ D.N. Makridis_
Dimitrios N. Makridis (0089131)
Makridis Law Firm, LLC
155 S. Park Ave, Suite 160
Warren, OH 44481
Phone: (330) 394-1587

            Fax: (330) 394-3070
            Email: dimitrios@makridislaw.com
            *Attorney for Plaintiff*

## **JURY DEMAND**

Pursuant to Fed.R.Civ.P. 38, Plaintiff demands a jury trial on all issues so triable.

            Respectfully submitted,

            *s/ D.N. Makridis*
            Dimitrios N. Makridis
            *Attorney for Plaintiff*